Richter, J.,
dissents in a memorandum as follows: The majority’s ruling unjustifiably interferes with the judgment of the trial court in this case involving the forcible touching of an adolescent girl by another adolescent. Based on the 14-year-old complainant’s account, which was credited both by the trial court and the majority here, on November 23, 2010, at around 5:20 p.m., the complainant was walking home after school with appellant. Appellant, who was 15, began asking the complainant to kiss him, telling her that she was “really hot.” She told him no. When appellant continued to ask for a kiss, she told him to go somewhere else because she “did not want problems.” Appellant pulled her by the arm and again told her to kiss him, and she again told him no.
Appellant then pushed her up against the wall of a store and held her there with his hands on her shoulders. He told her that he gets whatever he wants and then tried to kiss her. She tried to push him away, telling him the entire time to leave her alone. She moved her head back and forth in an effort to avoid his kisses, but he kissed her at least twice on the mouth and *466 kissed her neck. As she tried to push him away, he grabbed the top of her blouse and pulled it, along with her bra, down, exposing her breasts. He then kissed and sucked on both of her breasts before she managed to push him away.
She then started walking quickly to her apartment building. He followed her, continually telling her that he would not leave until she kissed him. When she reached her building, she told appellant she would not open the door until he left. When he refused to leave, she finally went inside. He followed her into the elevator, where he grabbed her and backed her up against the wall, ordering her to “give [him] a kiss now.” When he tried to kiss her, she bit his lips and in response he said “that’s how he liked women.” When the elevator reached her floor, she was finally able to get away from him. She had red marks on her neck for two days and pain in her breast for a day afterwards. Her mother noticed these red and black marks on her neck the next day and her father called the police.
The majority’s decision to vacate the juvenile delinquency finding is of concern. The offense did not consist of a momentary lapse in judgment, but rather was a prolonged attack in which the victim told appellant several times that she did not want to kiss him and made it clear that he should leave her alone. Appellant ignored her pleas for him to leave her alone and proceeded to forcibly kiss her neck and breasts. Further, appellant then followed the complainant into her apartment building where he again cornered her and tried to kiss her. Appellant’s actions, including his statement to the complainant that he gets whatever he wants, indicate a sense of entitlement and disregard for the rights and well-being of others.
The majority and I do not differ on what the complainant said on cross-examination, but rather on the conclusion to be drawn from some of her statements. I discuss this issue, in part, because the implication of the majority’s decision is that they think the complainant is exaggerating. For example, the fact that the complainant told her friend Jason she did not “want anything to happen to appellant,” does not mean the attack did not occur. The complainant was a teenager who may not have wanted to have to relive this incident by prosecuting it, or was concerned about the possible repercussions of having someone she knew, a school athlete who was supposedly her friend, punished based on her reporting of abuse. I find her behavior to be entirely consistent with that of sexual assault victims, especially in cases where the complainant knows her assailant. In any event, she was 14 years old and it was not her decision whether he faced legal consequences; such decisions are made *467 by the court. Further, the complainant’s statement to her friend Jason that her father was making her go through with the complaint and that all of this was happening because of her father does not indicate that she is lying about appellant’s abuse.[1] Any insistence by her father that a report be filed against appellant, even if she may not have wanted to contact the police, is of little significance. Ultimately, she testified in Family Court and the judge believed her.[2]
The majority dismisses the petition because it is appellant’s first offense, he has good grades, and has a strong social network. But the conduct here is not such that the extraordinary remedy of an ACD nunc pro tunc is appropriate. Appellant’s academic performance, which is a positive accomplishment, does not mitigate the aggressive nature of the offense, which left marks on complainant’s neck and breasts. Moreover, appellant obviously has the intellect to know the difference between right and wrong, and the majority’s reference to his support network does not take into account the fact that his primary guardian, his mother, refused to accept that he did anything wrong. Nor does the fact that this is appellant’s first offense entitle him to a lesser disposition (see Matter of Thomas D., 50 AD3d 897 [2d Dept 2008]).
Appellant also urges this Court to take into consideration his participation in athletics. I fail to see how appellant being an athlete supports an ACD. Appellant’s participation in team sports did not stop him from attacking the complainant. Furthermore, the letters from his teacher and his coach about his leadership skills make no mention of the offense at issue here. We have no idea what their opinion of appellant’s character would be if they knew about his inappropriate actions. The behavior appellant engaged in is consistent with intimidation and a lack of self-control. It certainly does not make him someone whose behavior other young people should follow. Moreover, his unwillingness to admit what actually happened is inconsistent with leadership and shows a reluctance to be held accountable.
*468 The Family Court has broad discretion in fashioning a disposition and its determination should be accorded a great amount of deference (Matter of Donovan E., 92 AD3d 881, 882 [2d Dept 2012]). Here, the Family Court determined, after considering the nature of the instant offense and reviewing the reports provided, that an ACD was not appropriate. Rather, the court found appellant required supervision and that 12 months of probation, with the requirement that he participate in a sexual offender treatment program, was the least restrictive alternative in light of the needs of appellant and the safety of the community (see Family Ct Act § 352.2 [2]). The probation report also recommended that appellant receive sex offender treatment counseling and supervision.
The cases that the majority relies on to support the contention that probation was not the least restrictive disposition available do not concern sexual offenses (e.g. Matter of Tyvan B., 84 AD3d 462 [1st Dept 2011] [possession of graffiti instruments and criminal possession of marihuana in the 5th degree]; Matter of Anthony M., 47 AD3d 434 [1st Dept 2008] [petit larceny]). Although there are cases in which an ACD would be warranted (see e.g. Matter of Julian O., 80 AD3d 525 [1st Dept 2011]), the disposition here was “appropriate in light of. . . the nature of the incident and the recommendations made in the probation report” (Matter of Thomas, 50 AD3d at 898; see also Matter of Najee A., 26 AD3d 258 [1st Dept 2006], lv denied 7 NY3d 703 [2006] [probation appropriate where appellant engaged in sexualized conduct including attempting to pull down victim’s pants]).
The majority also bases its determination on appellant’s alleged remorse for his behavior and his participation in a sexual offender program. In fact, appellant initially showed no remorse for his actions and denied having done anything wrong. His account in the probation report blames the victim, stating that she told him to kiss her. He also denied removing any of her clothes or touching her breasts. The record indicates that appellant did not even begin to take responsibility for his actions until he was evaluated by the Sexual Behavior Clinic for their sexual offender program. The clinic’s evaluation is dated less than a week before the disposition proceeding. Indeed, the Family Court correctly noted that appellant only appeared to take responsibility for his actions when it was in his best interest to do so. Although the clinic indicated that appellant expressed remorse for his behavior, appellant only admitted to kissing the complainant even after she said stop and “playing and messing” with her. This minimization of the incident, which is not *469 addressed by the majority, is further evidence that he needed the probation supervision mandated by the court, and not an ACD.
The majority commends appellant for attending his program, but appellant’s participation in the sexual offender program was a condition of his probation. Whether he completed the program is not something we can consider because it involves facts that occurred after the Family Court proceeding was complete (see e.g. People v Fields, 110 AD3d 559 [1st Dept 2013], lv denied 22 NY3d 858 [2014]). In any event, even if appellant actually complied with the court’s direction, we cannot ignore the fact that he faced a possible probation violation proceeding if he had done otherwise. Furthermore, the mere fact that appellant stayed out of trouble for the 18 months that this case was pending is of little consequence as it was in appellant’s self-interest to refrain from committing any further offenses during that period because the court had not decided the case.
It is not the role of an appellate court to retroactively determine what the appropriate sanction should be, but rather our role is to determine whether, based on the facts and circumstances as they existed at the time of the Family Court proceeding, the trial court acted appropriately. If the legislature wants to create an option for an appellate court to expunge juvenile delinquency adjudications once someone has successfully completed probation, it is up to the legislature to do so.[3] In deciding that appellant should be given an ACD nunc pro tunc, the majority does not identify a single fact that the trial judge, who actually met appellant, overlooked. After consideration of the very same mitigating factors identified by the majority, the trial judge correctly concluded probation was the least restrictive alternative. Although the majority describes appellant as “an otherwise promising young individual,” his statements and behavior suggest a more deep seated problem than the majority is willing to acknowledge. Thus, taking into account all of the circumstances including his unwillingness to take full responsibility, I would affirm.

. It should be noted that the recording of the conversation between the complainant and Jason, although played during the hearing, was in Spanish and no transcript of a translation of the conversation is included in the record. We therefore do not have a complete context for her remarks. Although the complainant also mentions the super in this recorded conversation, the record provides no information about what she might have told the super and he did not testify.

. Contrary to the dissent’s suggestion, no conclusion about the complainant’s credibility can be drawn from the trial judge’s decision to dismiss the charge of sexual abuse in the first degree. The judge gives no explanation for this ruling.

. A few courts have vacated juvenile delinquency adjudications pursuant to Family Ct Act § 355.1, which requires a substantial change of circumstances. In such an application, the trial court has a record of the juvenile’s actions after the original order was issued, something that is beyond the appellate record. I take no position on whether such an application would have been appropriate here.